Eugene B. SHERRY, Plaintiff-Appellant,†

v.

Emile W. SALVO and Tomah Memorial Hospital, Defendants,

EMPLOYER'S INSURANCE OF WAUSAU, a Mutual Company, and City of Tomah (Tomah Police Department), c/o Tomah Municipal Building, Defendants-Respondents.

Court of Appeals

*No. 96–0822. Submitted on briefs August 12, 1996.—Decided September 26, 1996.*

(Also reported in 555 N.W.2d 402.)

†Petition to review denied.

16

17

For the plaintiff-appellant the cause was submitted on the briefs of *James J. Natwick* of *Bosshard & Associates* of La Crosse.

For the defendants-respondents the cause was submitted on the brief of *Wayne R. Luck* of *Stilp and Cotton* of Eau Claire.

Before Eich, C.J., Roggensack and Deininger, JJ.

EICH, C.J. Eugene B. Sherry appeals from a judgment dismissing his personal injury claim against the City of Tomah and its insurer, Employer's Insurance of Wausau.[1]

The incident giving rise to the claim occurred in the Tomah Memorial Hospital emergency room, where Sherry had gone to seek treatment for a drug overdose. He sued the City, the hospital and the emergency-room physician, Dr. Emile Salvo, for injuries he suffered when two Tomah police officers, who had been called to the emergency room to aid Salvo and the hospital's medical staff in dealing with his boisterous conduct and physical resistance, attempted to subdue him.

The City, the hospital and Dr. Salvo moved for summary judgment dismissing the action. The trial court denied Salvo's and the hospital's motions and

---

[1] Because the City of Tomah and its insurance company, Employer's Insurance of Wausau, filed a joint brief raising a single set of arguments, the word "City" will refer to both respondents throughout this opinion.

18

granted the City's, concluding that the city police officers were immune from liability under § 893.80(4), STATS.[2] This appeal concerns only the City's dismissal from the action.

Sherry's appeal challenges the trial court's immunity ruling. He also argues that summary judgment was inappropriate in any case because of the existence of disputed material facts. Alternatively, he contends that, even if the officers are immune under the statute, the City is responsible for his injuries under provisions of the mental health law, § 51.61(7), STATS., authorizing mental health patients to sue any person—or any governmental entity—for the unlawful denial of rights afforded them under the law.

We reject Sherry's arguments and affirm the judgment.

The basic facts are not in dispute. Sherry went to the emergency room complaining of breathing difficulties and dizziness. He advised Salvo and the emergency room staff that he had taken an overdose of Flexeril, a muscle relaxant. However, his symptoms—extremely rapid heart rate, high blood pressure and profuse perspiration—were contrary to the normal symptoms of a depressant overdose. Looking to his medical records, Salvo and the staff learned that Sherry, who by this time had also admitted to ingesting cocaine earlier that day, had a history of chemical dependency and had tested positive for hepatitis C. He appeared to be "very confused, paranoid, and irrational."

Salvo concluded that Sherry needed immediate intravenous (IV) medication to control his high blood

---

[2] As we discuss in more detail below, the statute, as interpreted in a series of cases, immunizes public officers from liability for negligence in the performance of "discretionary" acts, as opposed to acts that are purely "ministerial" in nature.

pressure and rapid heart beat, and that a blood sample needed to be taken to attempt to ascertain the amount and type of pills or other drugs in his system. When a nurse began to administer the IV, Sherry refused, stating that he was afraid of needles, and became "panicky," extremely agitated, and combative. Believing it to be "extremely important" to avoid any needle injury to hospital staff because of Sherry's hepatitis, Salvo asked for assistance from hospital security. Because the hospital did not have its own security personnel, the staff telephoned the Tomah Police Department for assistance.

Two officers were sent to the hospital, but even with their assistance in holding Sherry and placing him in restraints, hospital staff was unable to insert the IV, or to draw blood for testing, because he continued to resist. Realizing that Sherry's conduct precluded safe and effective treatment at Tomah Memorial, Salvo decided to transfer him to St. Francis Hospital in La Crosse. Because a blood workup was required for the transfer, the staff, again with the officers' assistance, placed Sherry in restraints, drew some blood and then removed the restraints. The sample was inadequate, however, and when Salvo told Sherry they would need to take more, he broke away and ran down the hospital corridor. The officers pursued him and in the ensuing struggle to subdue him, his wrist was broken. Sherry was then returned to the examining room where staff drew blood a final time. Sometime later the officers transported him by ambulance to St. Francis, where he was admitted for observation and treatment. Other facts will be discussed below.

## I. Standard of Review

Summary judgment is appropriate in cases where there is no genuine issue of material fact and the moving party has established his or her entitlement to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). In reviewing a summary judgment, we apply the same methodology as the trial court,[3] and we consider the issues de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

## II. Public Officer Immunity

Section 893.80(4), STATS., states that no action may be maintained against public agencies or employees for acts done in the exercise of "legislative, quasi-legislative, judicial, or quasi-judicial functions." The quoted terms have been recognized as synonymous with "dis-

---

[3] The procedure is well known and frequently cited. If the complaint states a claim and the answer a defense, we look to the evidentiary facts stated in the moving party's affidavits or other proofs to see whether a prima facie case for summary judgment exists. If it does, we then examine the opposing party's affidavits and proofs to see whether a genuine issue exists as to any material fact, or whether reasonable conflicting inferences may be drawn from undisputed facts. If such factual issues are found to exist, summary judgment is improper. If there is no dispute as to the material facts or inferences, however, summary judgment is appropriate and we proceed to consider the legal issue or issues raised by the motion. *State Bank v. Elsen*, 128 Wis. 2d 508, 511, 383 N.W.2d 916, 917 (Ct. App. 1986).

cretionary acts"—acts involving " 'the exercise of discretion and judgment.' " *Kimpton v. School Dist.*, 138 Wis. 2d 226, 234, 405 N.W.2d 740, 743 (Ct. App. 1987) (quoted source omitted). Thus, a public officer is immune from suit where the act or acts complained of are "discretionary," as opposed to merely "ministerial." A ministerial act has been defined as one "where the . . . duty is absolute, certain and imperative, involving merely the performance of a specific task," and "the time, mode and occasion for its performance" are defined "with such certainty that nothing remains for the exercise of judgment [and] discretion." *C.L. v. Olson*, 143 Wis. 2d 701, 717, 422 N.W.2d 614, 620 (1988).

Sherry argues first that the discretionary acts immunized by the statute must be acts of "governmental" discretion, and the Tomah officers were not acting in a governmental capacity at the time of his injury. While some cases have recognized a distinction between "discretion" and "governmental discretion," *see Kimps v. Hill*, 200 Wis. 2d 1, 546 N.W.2d 151 (1996), no Wisconsin decision has applied this distinction in any setting other than one involving "allegations of negligence regarding medical decisions." *Stann v. Waukesha County*, 161 Wis. 2d 808, 818, 468 N.W.2d 775, 779 (Ct. App. 1991).

Sherry next argues that the officers' actions were not discretionary but ministerial because "[a]t each and every step during the process the police officers were told by the medical staff what they should do in securing [him]." While this may be true insofar as it relates to the officers' placement of the restraints on Sherry while his blood was being drawn, the acts for which Sherry seeks to hold the City liable are those

22

connected with the officers' attempt to apprehend and subdue him as he ran through the hospital corridors. We consider the situation to be similar to the one we faced in *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 474 N.W.2d 799 (Ct. App. 1991), where the plaintiff claimed that two police officers negligently injured him while performing field sobriety tests, arresting him, and assisting him into the squad car. We held the officers were immune from liability because their actions were not the type of "absolute" or imperatively prescribed acts which may be described as ministerial, but rather were discretionary in nature. *Id.* at 428, 474 N.W.2d at 802.

Like the officers in *Sheridan*, the Tomah officers' acts in restraining Sherry were highly discretionary. They were reacting to highly charged and dynamic circumstances in pursuing and subduing Sherry, and were using their professional judgment as to how that task might best be accomplished. We see no error in the trial court's ruling that the officers are immune from liability under § 893.80, STATS.

### III. Liability Based on Agency

In an apparent attempt to evade the governmental immunity statute, Sherry contends that (1) in subduing him, the officers were acting not as city police officers but as agents of the hospital; and (2) because issues of fact may exist with respect to the application of an agency theory, summary judgment was inappropriate.

It is a curious argument. Sherry's action against Salvo and Tomah Memorial is still pending in the trial court. This appeal concerns only the dismissal of his claims against the City of Tomah based on the actions

of its police officers; his claim that the officers are the hospital's agents, not the City's, thus seems out of place. Even on its merits, however, the argument is unavailing.

Sherry's agency theory is grounded on a single statement in Dr. Salvo's deposition that he thought there may have been "some type of verbal agreement" between the hospital and the Tomah Police Department to provide security to the hospital. He has provided us with no authority supporting the proposition that an agency relationship may be created by calling for police assistance and protection,[4] and we consider the factual underpinning for this argument—Salvo's unexplained speculation as to the possible existence of an "agreement" between the hospital and the police department—inadequate to establish even a prima facie case for the existence of an agency relationship.

## IV. Liability Under Chapter 51, STATS.

Sherry next argues that the City is liable under § 51.61(7), STATS., the "patients' rights" section of the Mental Health Act. The statute sets forth the various rights guaranteed to mental health patients in Wisconsin, including the right to refuse medication and

---

[4] The only authority Sherry cites dealing with police officers as agents of private parties is a seventy-year-old annotation entitled "Liability of Private Employer of Police Officer for Latter's Negligence or Other Misconduct." 55 A.L.R. 1197 (1928). There is no evidence in this case, however, that Tomah Memorial "employed" the police officers in any capacity. Moreover, the annotation states that when the officer is acting in an "official capacity," this "protect[s] his private employer from liability." *Id.* at 1198, 1204-05.

treatment (except as ordered by a court or as may be "necessary to prevent serious physical harm to the patient or to others"). Section 51.61(1)(g)1. And it gives "[a]ny patient whose rights are. protected under [§ 51.61]" the right to sue "any person, including the state or any political subdivision thereof," for damages suffered as a result of "the unlawful denial or violation of any of these rights." Section 51.61(7)(a).

Sherry contends that he was a "patient" within the meaning of the Act while at Tomah Memorial, and even if the City and the officers are otherwise immune under § 893.80, STATS., that immunity is pierced by the authorization in § 51.61(7)(a) of suits against munici-palities by mental health patients for violation of the rights granted by the statute—including the right to refuse treatment under certain conditions.[5] *See* § 51.61(1)(g)1.

As the statute indicates, however, the rights enu-merated in § 51.61(7), STATS., are granted only to mental health "patients" as that term is defined in § 51.61(1):

> In this section, "patient" means any individual who is receiving services for mental illness, developmen-tal disabilities, alcoholism or drug dependency, including any individual who is admitted to a treat-ment facility[6] in accordance with this chapter . . . or

---

[5] The trial court did not consider the application of § 51.15, STATS., to the City (or the officers), granting the City's summary judgment motion solely on the basis of the officers' immunity under § 893.80, STATS.

[6] "Treatment facility" is defined elsewhere in the chapter as "any publicly or privately operated facility . . . providing treat-ment of alcoholic, drug dependent, mentally ill or developmentally disabled persons, including but not limited to inpatient and outpatient treatment programs, community sup-

who is detained, committed or placed under this chapter . . . . In private hospitals and in public general hospitals, "patient" includes any individual who is admitted for the primary purpose of treatment of mental illness, developmental disability, alcoholism or drug abuse *but does not include an individual who receives treatment in a hospital emergency room* . . . unless the individual is otherwise covered under this subsection.

(Emphasis added.)

Section 51.61(1), STATS., by its terms, defines "patient" in two contexts: (1) those persons admitted or committed to, or detained at, facilities engaged in providing treatment for mental illness or substance abuse; and (2) persons admitted to general hospitals for such treatment. No one argues in this case that Tomah Memorial Hospital is a treatment facility within the meaning of the statute, or that it is anything other than a general hospital. As a result, individuals such as Sherry who seek treatment in a general hospital emergency room are expressly stated *not* to be "patients" under the italicized language of § 51.61, as quoted above.

Sherry disagrees. He says he is not the mine-run emergency-room visitor, and that the peculiar circumstances of this case bring him within the "otherwise covered" language in the concluding clause of § 51.61(1), STATS. He maintains he is a "patient" under the statute because he was "detained" within the meaning of its opening lines.

Under the Act, a person may be "detained" pursuant to "emergency detention" procedures set forth in

port programs and rehabilitation programs." Section 51.01(19), STATS.

§ 51.15, STATS. The statute authorizes a law enforcement officer who has cause to believe a person to be mentally ill, drug dependent or developmentally disabled, and presents a "substantial probability of physical harm to himself or herself" or to others, to take the person into "custody" and transport him or her to a specified facility "for detention and for treatment." Section 51.15(1), (2).[7] Upon arrival at the facility, the officer signs a "statement of emergency detention" setting forth "detailed specific information" regarding the acts which led the officer to believe the individual is mentally ill and dangerous. Section 51.15(5). The statement is filed with the facility at the time of the person's admission (and with the court immediately thereafter), and it is given "the same effect as a petition for commitment under s. 51.20." *Id.*

Section 51.15(8), STATS., authorizes the staff of the facility to treat the individual "during detention," noting that such treatment can only be undertaken with his or her consent in light of the treatment-refusal rights expressly granted to mental health patients by § 51.61(1)(g). Finally, § 51.15(9) states that, "[a]t the time of detention," the director of the facility must also advise the individual of his or her right to contact an attorney and family member.

These procedures key the individual's "detention" to his or her placement in the custody of the treatment facility. The role of the law enforcement officer under § 51.15, STATS., is only to transport the individual to the

---

[7] While the parties do not indicate, we assume that St. Francis Hospital in La Crosse is either a "hospital approved by the [state] as a detention facility, or under contract with a county department under [ch.] 51," within the meaning of § 51.15(2)(a), STATS. As indicated, no one suggests that Tomah Memorial Hospital is such a facility.

facility *"for detention* and treatment." Upon arrival, and the filing of the detention statement, the individual is deemed to be in the custody of the facility and it is only then that the facility's director is required to advise him or her of the mental health patients' rights under § 51.61—including the right to refuse treatment under certain conditions—and of the right to contact counsel and family. The statutes expressly state that these admonitions are to be given " *[a]t the time of detention."* Section 51.15(9) (emphasis added).

We conclude, therefore, that Sherry was not being "detained" within the meaning of §§ 51.15 and 51.61(1), STATS., at the time of his injury at Tomah Memorial. His "detention" occurred—and he became entitled to assert and sue for violation of the mental patients' statutory right to refuse treatment under the Act—when he was placed in the custody of the treatment facility at St. Francis Hospital. The injuries of which he complains were incurred prior to that time, when the officers were engaged in the law-enforcement-related process of subduing him for his own safety and the safety of others in the emergency room—before they took him into custody for transportation to St. Francis Hospital, where he would be detained in the manner prescribed by § 51.15.

To conclude otherwise—to say that Sherry was "detained" within the meaning of chapter 51 while at Tomah Memorial—would swallow the safe harbor for general hospital emergency-room treatment expressly provided in the patient-definition provisions of § 51.61(1), STATS. These provisions recognize that, by its nature, medical care rendered in emergency rooms often must be provided instanter, with no time for the medical staff to sit back and consider the legal conse-

quences of the care determined to be medically necessary in an emergency setting.

It follows that Sherry was not a mental health patient as that term is defined in the Act while at the Tomah Memorial emergency room, and thus may not avail himself of any cause of action against the City under § 51.61, STATS. See WIS. ADM. CODE § HFS 94.01(2), which was adopted to implement § 51.61, and which states: "This chapter does not apply to a hospital emergency room."[8]

---

[8] In ruling that Sherry was not being "detained" under chapter 51, STATS., while at Tomah Memorial, we are mindful that the trial court, in denying the summary judgment motions of Dr. Salvo and the hospital, determined that material factual disputes existed with respect to whether Sherry was "detained" within the meaning of chapter 51 at some point while still in the hospital emergency room. Specifically, the court stated:

> The first issue is when the emergency detention occurred; was it soon after [Sherry] was admitted to the hospital and before the nurse told the police [it] was "probably" a Chapter 51 matter? Was it when Dr. Salvo consulted with [the La Crosse hospital] and it was determined to send [Sherry] to St. Francis Medical Center or was it when [Sherry] was sent to St. Francis Medical Center? Was the detention the entire four-to-five-hour block of time that [Sherry] was at Memorial Hospital and [was] this . . . part of the detention process as the defendants contend? . . .
>
> If Section 51.15 applies, then comes the issue of 51.61 as to the rights of the patient . . . who is detained under Chapter 51 and who upon admission can refuse medication unless it is a situation in which medication or treatment is necessary to prevent serious physical harm to the patient. This again is a jury question and it relates to the timing question; such as, when was the patient detained. While the question of immunity of Dr. Salvo under Wis. Stat. 51.15(11) may be a question of law, the question of fact is when did the detention occur and this would have to be decided by a jury before the court could then apply the law. . . .

The conflict between our decision on this appeal and the trial court's ruling with respect to Salvo's and the hospital's

## V. Existence of Factual Disputes

Sherry's final argument—that summary judgment was improper because of the existence of disputed material facts—is no more than an unexplained list of questions: whether the hospital and the officers had an "agency" or "contractual" relationship; whether he was "entitled to any rights," what those rights were, and whether the officers violated them; whether there is an "interrelationship between [his] damages [and] . . . between the hospital and the police officers"; at what specific time "a detention occur[red]" at the emergency room; whether his was "an involuntary or voluntary Chapter 51 commitment"; whether the officers' acts were "quasi-judicial"; and whether the officers were present to arrest Sherry or to assist the medical staff.

In order to defeat a motion for summary judgment based on the presence of factual issues, the party opposing the motion must submit affidavits or other proofs to show that a material factual dispute actually exists. *Spivey v. Great Atl. & Pac. Tea Co.*, 79 Wis. 2d 58, 61, 255 N.W.2d 469, 471 (1977). Sherry makes no effort to show why whatever "facts" his unexplained list of questions may suggest are material to his claims against the City. We have held that Sherry has not supplied any prima facie evidence that an agency relationship existed between the hospital and the City of Tomah; that the officers are immune from liability

motions is apparent. We hasten to note, however, that we do not know the precise nature of the claims Sherry is making against Salvo and the hospital. We are told in the briefs that they include claims for negligence and battery in addition to a claim under chapter 51, STATS. We hold here only that chapter 51 affords no basis for any claim relating to the conduct of the Tomah police officers at the hospital emergency room.

under the "discretionary-act" immunity provided by § 893.80, STATS.; and that the patients' rights provisions in § 51.61 do not apply to his claim against the City. Thus, all Sherry's "questions"—save one—relate to matters we have resolved against him on this appeal. The remaining question relates to the reasons for the officers' presence at the emergency room, and that is not a "material fact." A material fact is one that is "of consequence to the merits of the litigation," *In re Michael R.B.*, 175 Wis. 2d 713, 724, 499 N.W.2d 641, 646 (1993), and nothing in this case suggests that the officers were either acting illegally or were at the hospital in some illegal capacity. Sherry was injured while the officers were performing their official duties as police officers, whether they subdued him under law enforcement auspices or simply in an effort to aid the hospital staff in maintaining order in the emergency room and in providing medical assistance to Sherry while protecting themselves and others around them. He has not persuaded us of the existence of any material factual dispute with respect to his claim against the City.

*By the Court.*—Judgment affirmed.