IN the MATTER OF DELORES M.:

MILWAUKEE COUNTY, Petitioner-Respondent,

v.

DELORES M., Respondent-Appellant.

Court of Appeals

*No. 96–2508. Submitted on briefs December 2, 1997.—Decided February 10, 1998.*

(Also reported in 577 N.W.2d 371.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Karen Kotecki* of the *Legal Aid Society of Milwaukee, Inc.*, of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Robert A. McKnight*, principal assistant corporation counsel, of the *Office of Corporation Counsel*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.   Delores M. appeals from the trial court's denial of her motion to dismiss Milwaukee

County's petition to commit her pursuant to Chapter 51, STATS. The only question presented by this appeal is whether the time limits established by § 51.15, STATS., are triggered when a person taken into custody in Milwaukee County under that provision is transported to a facility other than one designated by the County for that purpose. The answer to this question is "yes" as long as the facility is one of those specified in § 51.15(2), STATS. We nevertheless affirm because the trial court's findings that St. Luke's Medical Center is not one of the facilities designated by § 51.15(2) are not "clearly erroneous." *See* RULE 805.17(2), STATS. (trial court's findings of fact may not be set aside on appeal unless they are "clearly erroneous").[1]

The parties agree that Delores M.'s son sought police assistance because she was refusing to eat and appeared to be mentally ill. Additionally, the son complained that although his mother was suffering from what the officers' report described as "numerous medical problems," Delores M. refused to seek medical treatment or care. The parties also agree that the officers took Delores M. into custody pursuant to § 51.15(1), STATS., which authorizes a law-enforcement officer to take a person into custody if the officer "has cause to believe" that the person is, among other things, "mentally ill" and "evidences" either "[a] substantial probability of physical impairment or injury to

___

[1] Although Delores M. is no longer subject to the commitment proceeding involved in this appeal, and, therefore, the case is moot, it presents important liberty-interest issues that would defy appellate review unless we acceded to the request of both parties and retained jurisdiction. *See State v. Avila,* 192 Wis. 2d 870, 879, 532 N.W.2d 423, 425-426 (1995) (issues that arise frequently and that will otherwise avoid review should be addressed even though technically moot).

71

himself or herself due to impaired judgment, as manifested by evidence of a recent act or omission" or "[b]ehavior manifested by a recent act or omission that, due to mental illness . . . , he or she is unable to satisfy basic needs for nourishment [or] medical care . . . without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness." *See also* § 51.15(4), STATS. (setting forth procedures to be followed by Milwaukee County law-enforcement officers).

The officers transported Delores M. to St. Luke's Medical Center in Milwaukee, where she remained for more than seventy-two hours. Section 51.15(4)(b), STATS., permits "the treatment director" of the facility to which the person is taken to "detain" the person "for a period not to exceed 72 hours after delivery of the individual, exclusive of Saturdays, Sundays, and legal holidays." A person may not be held involuntarily more than seventy-two hours unless a "probable cause" hearing is held within that seventy-two-hour period. Section 51.20(7), STATS.[2] Approximately ninety-one hours after she first arrived at St. Luke's, Delores M. was taken to the Milwaukee County Mental Health Complex. The applicable time limits set out in §§ 51.15 and 51.20, STATS., were complied with if they were triggered when Delores M. arrived at the Milwaukee County Mental Health Complex; they were not complied with if the time limits started to run when she was taken to St. Luke's.

---

[2] Substantially similar procedures are set out in § 51.15(5), STATS., for counties other than Milwaukee.

As noted, the only question presented by this appeal is whether the time limits established by § 51.15, STATS., are triggered when a person taken into custody in Milwaukee County under that provision is transported to a facility other than one designated by the County for that purpose. Delores M. argues that St. Luke's is a facility to which persons taken into custody under § 51.15, STATS., may be brought, and that the time limits established by §§ 51.15(4)(b) and 51.20(7), STATS., were thus violated. Milwaukee County, on the other hand, contends that only the Milwaukee County Mental Health Complex so qualifies. The resolution of this dispute requires that we analyze § 51.15(2), STATS., which describes the facilities to which persons taken into custody under § 51.15 must be brought. Interpretation of statutes presents legal issues that we resolve *de novo*. *Truttschel v. Martin*, 208 Wis. 2d 361, 364–365, 560 N.W.2d 315, 317 (Ct. App. 1997). A trial court's findings of fact, however, may not be set aside on appeal unless they are "clearly erroneous." RULE 805.17(2), STATS.

The statute applicable to this appeal is § 51.15(2), STATS. It reads, as material here:

> The law enforcement officer . . . shall transport the individual [taken into custody pursuant to § 51.15(1), STATS.], or cause him or her to be transported, for detention and for evaluation, diagnosis and treatment . . . to any of the following facilities:
>
> (a) A hospital which is approved by the department [of Health and Family Services, formerly the Department of Health and Social Services] as a detention facility or under contract with a county department under s. 51.42 or 51.437, or an approved public treatment facility;

(b)   A center for the developmentally disabled;
(c)   A state treatment facility; or
(d)   An approved private treatment facility, if
the facility agrees to detain the individual.[3]

The parties agree that St. Luke's is a private institution and is thus not a "public treatment facility" as that term is used in § 51.15(2)(a). Further, the record is clear that St. Luke's is not "under contract with a county department." Additionally, neither party contends that St. Luke's falls within the language of either § 51.15(2)(b), or § 51.15(2)(c). Although Delores M. argues that St. Luke's is a facility described by § 51.15(2)(d), the trial court found that the hospital did not agree to detain her. Delores M. has not shown this finding to be "clearly erroneous"; the trial court's finding that although Delores M. remained at St. Luke's for more than seventy-two hours, the hospital did not agree to "detain" her under the provisions of § 51.15 is reasonable. Accordingly, we are bound by it. *See* RULE 805.17(2), STATS.; *State v. Friday*, 147 Wis. 2d 359, 370–371, 434 N.W.2d 85, 89 (1989) (appellate court bound by reasonable inferences drawn by trial court).

█   In connection with her argument that the first phrase of § 51.15(2)(a), STATS., applies here, Delores M. submitted to the trial court what she described as a "list of certified mental health, alcohol and other drug abuse treatment facilities in Milwaukee County." The list, provided by the Wisconsin Department of Health and Social Services (as noted, the Department is now known as the Department of Health and Family Ser-

---

[3] The Department of Health and Social Services was renamed the Department of Health and Family Services effective July 1, 1996. See 1995 Wis. Act 27, §§ 9126(19) and 9426 (16).

vices), included St. Luke's. The trial court discounted this list because it did not identify those facilities approved by the Department as "detention" (as opposed to "treatment") facilities.[4] The trial court thus found that St. Luke's was not "approved by the department as a detention facility" within the meaning of § 51.15(2)(a). Delores M. did not present to the trial court any evidence to the contrary, and, accordingly, the trial court's finding is not "clearly erroneous." Thus, the trial court did not err in concluding that St. Luke's was not one of the facilities designated by § 51.15(2). We therefore affirm.[5]

Ordinarily, our conclusion that the trial court correctly decided the case presented to it by the parties would end our analysis. *See State v. Blalock*, 150 Wis.

---

[4] "Treatment facility" is defined by § 51.01(19), STATS., as "any publicly or privately operated facility or unit thereof providing treatment of alcoholic, drug dependent, mentally ill or developmentally disabled persons, including but not limited to inpatient and outpatient treatment programs, community support programs and rehabilitation programs."

[5] Section 51.15(2), STATS., appears to be mandatory: "The law enforcement officer . . . shall transport the individual [taken into custody pursuant to § 51.15(1)], or cause him or her to be transported, for detention and for evaluation, diagnosis and treatment . . . to" the facilities listed in subsections (a), (b), (c) and (d). *See Karow v. Milwaukee County Civil Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214, 217 (1978) (the word "shall" is generally construed as imposing a mandatory duty). Nevertheless, the parties do not discuss, and, accordingly, we do not analyze: (1) if § 51.15(2) imposes a mandatory duty, requiring that persons taken into custody under § 51.15 must be brought to one of the facilities described in § 51.15 and no other; and, if so, (2) the remedies available to a person taken into custody under § 51.15 if the law-enforcement officer does not comply with § 51.15(2).

2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) ("cases should be decided on the narrowest possible ground"). Nevertheless, the question of whether the time limits established by § 51.15, STATS., are triggered when a person taken into custody under that section is transported to a facility other than one specifically designated by a County for that purpose is a recurring one that will escape review unless we address it now. *See State v. Avila*, 192 Wis. 2d 870, 879, 532 N.W.2d 423, 425–426 (1995) (issues that are briefed, that arise frequently, and that will otherwise avoid review should be addressed even though technically moot); *cf. State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529, 533, 118 N.W.2d 939, 942 (1963) (issues briefed may be considered if they are likely to recur on remand even though other issues are dispositive of appeal).

■ Milwaukee County contends that because § 51.08, STATS., permits it to "establish and maintain a county mental health complex," which "shall be a hospital devoted to the detention and care of drug addicts, alcoholics, chronic patients and mentally ill persons whose mental illness is acute," the facility created pursuant to this grant of authority, the Milwaukee County Mental Health Complex, is the only facility where persons taken under custody by virtue of § 51.15, STATS., are entitled to the time-limit protections afforded by §§ 51.15 and 51.20, STATS. We disagree. First, there is nothing in § 51.15 that gives even colorable support for the County's contention. Second, to apply § 51.08 in the way suggested by Milwaukee County would override the legislature's designation in § 51.15(2) of facilities to which persons taken into custody under § 51.15 are to be brought. This would violate the rule that must give effect to a statute's plain meaning, *see DNR v. Wiscon-*

76

*sin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288–289 (1982), and the rule that "[a] statute should be construed so that no word or clause shall be rendered surplusage and every word if possible should be given effect," *see Donaldson v. State*, 93 Wis. 2d 306, 315, 286 N.W.2d 817, 821 (1980). Moreover, Milwaukee County's interpretation would trample on significant liberty interests by permitting open-ended involuntary confinement. *See Zinermon v. Burch*, 494 U.S. 113, 131 (1990) ("there is a substantial liberty interest in avoiding confinement in a mental hospital"); *Vitek v. Jones*, 445 U.S. 480, 491–492 (1980) (persons have due-process protected liberty interest in avoiding involuntary mental commitment). We reject Milwaukee County's argument.

Similarly without merit is Milwaukee County's contention that *Sherry v. Salvo*, 205 Wis. 2d 14, 555 N.W.2d 402 (Ct. App. 1996), supports its argument that the time limits established by § 51.15, STATS., are only triggered when a person taken into custody under that provision is transported to a facility specifically designated by a county for that purpose. Sherry voluntarily went to Tomah Memorial Hospital seeking treatment for an apparent drug overdose. *Id.*, 205 Wis. 2d at 19, 555 N.W.2d at 403–404. He started to act out, and the hospital called the police. Ultimately, after Tomah Memorial Hospital personnel were unable to properly care for Sherry because of his violent reactions, Sherry was taken involuntarily to St. Francis Hospital in La Crosse. *Sherry*, 205 Wis. 2d at 20, 555 N.W.2d at 404. Sherry sued the City of Tomah under, among other provisions, § 51.61(7), STATS., which gives to patients whose rights are protected by § 51.61 the authority to sue "any person, including the state or any political subdivision thereof" for damages sustained as

a result of "the unlawful denial or violation" of those rights. *Sherry*, 205 Wis. 2d at 24–25, 555 N.W.2d at 405–406. In an attempt to bring himself within the population of those protected by § 51.61, Sherry contended that while at Tomah Memorial he was a "patient" within the meaning of § 51.61(1) because he was "detained" as the term is used in that subsection. *Sherry*, 205 Wis. 2d at 25–26, 555 N.W.2d at 406. We disagreed, pointing out that "detention" under Chapter 51, STATS., is governed by the procedures set out in § 51.15, and that Sherry was not detained under that section until he was transported against his will to St. Francis Hospital (which we assumed was one of the facilities designated by § 51.15(2)) because Tomah Memorial Hospital was not a detention facility. *Sherry*, 205 Wis. 2d at 26–28 & 27 n.7, 555 N.W.2d at 406–407 & 407 n.7. Significantly, Sherry was not taken to Tomah Memorial by law-enforcement officers under the authority of § 51.15; he went to the hospital voluntarily. *Sherry* does not support Milwaukee County's contentions here.

In sum, we conclude that the time limits established by § 51.15, STATS., are triggered when a person taken into custody under that provision is transported to any of the facilities designated by § 51.15(2), irrespective of whether the facility to which the person has been brought is one specifically chosen by the county for the receipt of persons taken into custody under § 51.15.

*By the Court.*—Order affirmed.

SCHUDSON, J. *(concurring in part; dissenting in part).* I agree with the majority's most significant conclusion in this case:

[T]hat the time limits established by § 51.15, STATS., are triggered when a person taken into custody under that provision is transported to any of the facilities designated by § 51.15(2), STATS., irrespective of whether the facility to which the person has been brought is one specifically chosen by the county for the receipt of persons taken into custody under § 51.15.

Majority op. at 78. I disagree, however, with the majority's additional and inconsistent conclusion affirming the trial court's finding that St. Luke's "did not agree to detain" Delores M. *See* majority op. at 74.

The majority opinion does not quote the trial court's decision. To see the trial court's clearly erroneous reasoning, it is important to do so. The trial court's written decision states:

St. Luke's is an approved treatment facility but it does not become a "facility for detention" unless it "agrees to detain the individual." Here, there are contra-indications that St. Luke's agreed to detain [Delores M.].

First, if St. Luke's "agreed to detain" [Delores M.] under sec. 51.15(2)(d), it presumably would at least attempt to follow some of the detention procedures of sec. 51.15(4). The medical facility which makes a [sic] optional and voluntary decision to hold an individual in detention implicitly agrees to comply with the detention procedure. St. Luke's, however, did not follow *any* of the proscribed [sic] procedures. Second, St. Luke's considered [Delores M.] to be in police custody or under a "police hold" rather than its own detainee. . . . Third, if St. Luke's agreed to detain [Delores M.], no transfer to another approved facility would be necessary. [Delores M.] could have remained in St. Luke's "detention" until the conclusion of the involuntary commitment pro-

ceedings. [Delores M.] however was discharged as soon as she attained medical stability necessary for transfer.

(Footnote omitted; emphasis in original.) The trial court's reasoning is circular.

First, and most apparently, the trial court's circular approach begins with its contention that "if St. Luke's 'agreed to detain' [Delores M.] under sec. 51.15(2)(d), it presumably would at least attempt to follow some of the detention procedures of sec. 51.15(4)." The trial court then concludes that because St. Luke's did not follow the statutory detention procedures, St. Luke's did not agree to detain Delores M. Well, obviously, had St. Luke's followed the statutory detention procedures, Delores M. would have had no reason to complain or appeal.

It is precisely because St. Luke's did "agree[ ] to detain" Delores M. but did not follow the statutory detention procedures that this appeal has come about. What could be more clear? As the majority recounts, it is undisputed that the police detained Delores M. and brought her to St. Luke's pursuant to § 51.15(1), STATS. It is undisputed that St. Luke's admitted Delores M. Without her custodial status changing in any way, Delores M. remained at St. Luke's but was not afforded the rights guaranteed under the statutory detention procedures. Thus, regardless of whether any doctor, administrator, or other St. Luke's official explicitly "agree[d] to detain" Delores M., St. Luke's admitted her just as the police delivered her—in custody under § 51.15(1). Thus, regardless of whether St. Luke's then complied with the statutory detention procedures, it is inescapable that, as a matter of law, St. Luke's "agree[d] to detain" Delores M.

80

Second, the trial court states that "St. Luke's considered [Delores M.] to be in police custody or under a 'police hold' rather than its own detainee." That is exactly the point. Delores M. was in police custody when St. Luke's admitted her. St. Luke's could not admit Delores M. and, at the same time, divest her of her custodial status. As long as she remained at St. Luke's while in police custody pursuant to § 51.15(1), STATS., St. Luke's was obligated to comply with the statutory detention procedures.

Third, when the trial court states that "if St. Luke's agreed to detain [Delores M.], no transfer to another approved facility would be necessary," the trial court merely completes its circular explanation.

Simply and logically, Delores M.'s challenge to St. Luke's noncompliance with the statutory detention procedures cannot be refuted by the facts of St. Luke's *non*compliance. Yet, that is exactly what the trial court's decision attempts to do.

The majority is correct: the statutory detention procedures "are triggered when a person taken into custody . . . under [§ 51.15, STATS.] is transported to a facility other than one designated by the County for that purpose." Majority op. at 76. The majority is incorrect and inconsistent in accepting the utterly circular trial court reasoning that, somehow, despite being "transported to" St. Luke's in police custody, Delores M. was not in a facility that "agree[d] to detain" her.