DUGAN, J.
¶1 Keith J. Brooks appeals from the judgment of conviction, following a jury trial, for first-degree reckless homicide while using a dangerous weapon and misdemeanor battery.[1] He also appeals the trial court's order denying his motion for postconviction relief.
¶2 On appeal, Brooks argues that trial counsel were ineffective by "embracing the bad facts" regarding the victim's vulnerability and his escalating abuse of her and that this likely caused the jury to find him guilty of first-degree reckless homicide. He also argues that the standard jury instruction regarding proof beyond a reasonable doubt reduced the State's burden of proof thereby violating due process, and that this court should order a new trial in the interest of justice. We disagree and affirm.
¶3 The following background facts provide context for the issues raised on appeal. Additional relevant facts are included in our discussion.
BACKGROUND
¶4 In February 2013, the State charged Brooks with one count of first-degree intentional homicide, while using a dangerous weapon, and one count of misdemeanor battery. The victim died on January 27, 2013 from a single gunshot wound to her head.
¶5 Throughout the proceedings, Brooks was represented by two attorneys with the State Public Defender's Office with extensive experience representing defendants charged with homicide. One attorney had handled over 110 homicide cases; the other had handled over sixty cases. Brooks' primary goal was to obtain an acquittal on the first-degree intentional homicide charge. His secondary goal was to reduce the years of incarceration to which he was exposed.
¶6 Prior to trial, the parties filed multiple motions regarding evidence that would potentially be presented at trial. The trial court held three hearings on the motions.
¶7 The case was tried to a jury over seven days in January 2014. In opening statements, the State told the jury that they would hear testimony that after emotionally, verbally, and physically abusing the victim, Brooks put the gun to the back of the victim's head, shot her, and killed her. The State also stated that the jury would hear testimony that Brooks had reported the incident as a suicide in his 911 call, and told the police that the victim had taken the gun and shot herself in the head. The State framed the issue before the jury as presenting a question of whether the victim shot herself or Brooks shot her. The State concluded its opening statement by telling the jury that at the end of the trial, the evidence would prove beyond a reasonable doubt that Brooks killed the victim.
¶8 In his opening statement, trial counsel indicated that the evidence would show that the victim committed suicide and that Brooks did not shoot her. Trial counsel stressed that the victim had previously attempted to commit suicide, and she was distressed because Brooks was leaving her and a close girlfriend wanted nothing to do with her. Trial counsel also stated that the jury would hear testimony from the defense's more experienced doctors that supported Brooks' position that the victim shot herself. Nonetheless, trial counsel also acknowledged that the evidence would show that the couple's relationship was "bad," particularly in the five days prior to the victim's suicide, when Brooks alternately fought and reconciled with the victim, destroyed some of the victim's property, interrogated the victim about her sexual infidelity, and videotaped the interrogations.
¶9 Trial counsel indicated that on the night of the shooting, while Brooks was in the bedroom packing, the victim grabbed him and he pushed her to the floor. Brooks turned away and went into the bathroom to gather more of his belongings. He heard a click and knew something was wrong. He looked into the bedroom and saw the victim still lying on the floor. Then, he saw her raise the gun to her head. He tried to stop her, but she fired the gun, he saw blood, and he frantically called 911. Brooks tried to perform CPR on the victim. Trial counsel ended his opening statement by stating that "[s]he shot herself" and "you will also conclude that Keith Brooks did not shoot [the victim]. It's an unfortunate tragedy, but she shot herself; and you will find him not guilty."
¶10 At trial, there was testimony from six police officers who responded to the scene of the shooting on January 27, 2013; several detectives; a DNA analyst; three Milwaukee County medical examiners (M.E.), including the chief M.E., who conducted the autopsy of the victim; two defense forensic pathologists; and a firearm and tool mark examiner from the state crime laboratory. Family members, coworkers, and friends of the victim also testified. Approximately 150 exhibits were admitted into evidence.
¶11 In its closing argument, the State told the jury that it would have to decide whether Brooks killed the victim or whether she killed herself. The State also contended that Brooks' suicide theory was incredible based on the testimony and the scientific evidence.
¶12 In closing argument, trial counsel told the jury that what it had to decide was whether Brooks' "despicable actions cause[d] a woman who had a history of depression from her youth on forward to take her own life[.]" Trial counsel then told the jury that what it really had to decide was whether the State had proven beyond a reasonable doubt that Brooks was the one who pulled the trigger because if there was doubt, the law required the jury to find him not guilty.
¶13 In rebuttal, the State argued that Brooks was "the person who pulled the trigger" and that fact had been "proven beyond any reasonable doubt." However, for the first time in the case, the State suggested that maybe Brooks had removed the magazine containing bullets from the gun but had forgotten that there was a bullet in the chamber.[2] The State went on to argue that when Brooks was threatening the victim with the gun, he may have forgotten that the gun was loaded but it was, and he shot and killed her. The State then argued that this scenario was certainly much more plausible than the one Brooks offered. The State concluded its argument by stating that the only explanation supported by the evidence was that "Brooks killed [the victim]. She didn't kill herself. He pulled that trigger."
¶14 The trial court instructed the jury on first-degree intentional homicide, first-degree reckless homicide, and second-degree reckless homicide.[3] The jury found Brooks guilty of the lesser included offense of first-degree reckless homicide while using a dangerous weapon, and battery. The trial court sentenced Brooks to a global sentence of sixty years comprised of forty years of initial confinement and twenty years of extended supervision.
¶15 Brooks filed a postconviction motion asserting that, as germane to the issues on appeal,[4] trial counsel were ineffective because they "caused Brooks' conviction" for reckless homicide by (1) admitting that Brooks had "relentlessly abused" the victim before her death; (2) arguing and introducing evidence that the victim had previously attempted suicide, remained an unstable person, and that Brooks was aware of those facts; (3) asking for the lesser included first-degree reckless homicide instruction; and (4) making statements in closing argument that Brooks pushed the victim over the edge to commit suicide. Brooks also claimed that the standard jury instruction on reasonable doubt confused the jury and impermissibly lowered the State's burden of proof, contrary to due process.
¶16 The trial court held a Machner hearing[5] on Brooks' argument regarding trial counsel's request for the lesser included offense instruction. It denied the other claims in his postconviction motion without a hearing. Both trial counsel and Brooks testified at the Machner hearing. After the close of the testimony, the trial court denied the motion in an oral decision concluding that trial counsel's performance was not deficient and that there was no prejudice because the overwhelming weight of the evidence supported the jury verdict.
¶17 In its oral decision, the trial court made the following factual findings regarding trial counsel's performance: (1) Brooks agreed with, and consented to, trial counsel's strategy; (2) his communication with counsel was satisfactory; (3) he was able to explain that his primary goal was a not-guilty verdict; (4) he also had the secondary goal of reducing the years of incarceration to which he was exposed; (5) trial counsel were experienced professionals and they exhibited an appropriate level of familiarity with the facts and the applicable law; (6) trial counsel pursued several motions relating to evidentiary issues and raised jury instruction issues with the trial court; and (7) trial counsel provided "vigorous advocacy" concerning the emotional and mental state of the victim, including testimony about her prior suicide attempts, her depressed mood, and her poetry and writings that evinced the victim's state of mind at the time of her death.
¶18 With respect to prejudice, the trial court noted that postconviction counsel's argument about an open path being given to jurors to convict Brooks of reckless homicide "completely ignored the physical evidence" at the scene, the medical evidence provided through the testimony of five medical experts, the arguments from the State and trial counsel about what the physical evidence showed, Brooks' statements, the effect of the interrogation video recordings upon the jury, and "the weight of all of these things combined." The trial court also found that "the physical evidence completely 100 percent supported the verdict of the jury." A brief written order followed. Brooks appeals.
DISCUSSION
I. Brooks Has Not Met His Burden of Showing that Trial Counsel's Strategy Was Deficient
A. The Standards of Review and Applicable Law
¶19 The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to effective assistance of counsel. State v. Balliette , 2011 WI 79, ¶ 21, 336 Wis. 2d 358, 805 N.W.2d 334 (citing Strickland v. Washington , 466 U.S. 668, 686 (1984) ). A defendant must establish two elements to show that his counsel's assistance was constitutionally ineffective: (1) counsel's performance was deficient; and (2) "the deficient performance resulted in prejudice to the defense." Id.
¶20 As to the first prong of the ineffective assistance of counsel test, "[c]ounsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness." State v. Thiel , 2003 WI 111, ¶ 19, 264 Wis. 2d 571, 665 N.W.2d 305. "Counsel need not be perfect, indeed not even very good, to be constitutionally adequate." Id. (citation omitted). Moreover, "[t]rial strategy is afforded the presumption of constitutional adequacy." State v. Breitzman , 2017 WI 100, ¶ 65, 378 Wis. 2d 431, 904 N.W.2d 93.
¶21 As to the second prong of the ineffective assistance of counsel test, prejudice occurs when the attorney's error is of such magnitude that there is a "reasonable probability" that but for the error, the outcome of the proceeding would have been different. State v. Erickson , 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999). "Stated differently, relief may be granted only where there 'is a probability sufficient to undermine confidence in the outcome,' i.e., there is a 'substantial, not just conceivable, likelihood of a different result.' " State v. Starks , 2013 WI 69, ¶ 55, 349 Wis. 2d 274, 833 N.W.2d 146 (quoting Cullen v. Pinholster , 563 U.S. 170, 189 (2011) ).
¶22 The standard of review of the ineffective assistance of counsel components, deficient performance and prejudice, is a mixed question of law and fact. State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990) (citing Strickland , 466 U.S. at 698 ). We will not overturn the trial court's findings of fact, "the underlying findings of what happened," unless they are clearly erroneous. See id. (citation omitted). However, "[t]he ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." See id. at 128. "[C]ourts may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice." Id.
¶23 On appeal, Brooks challenges the trial court's legal determinations that trial counsel's performance was not deficient and that he was not prejudiced. He also contends that several of the trial court's findings of fact were clearly erroneous.
B. The Trial Court's Findings of Fact are Supported by the Record
¶24 Brooks challenges as clearly erroneous, the trial court's finding that trial counsel's theory of the defense was that the victim committed suicide and that Brooks did not physically shoot her. Brooks relies on excerpts of trial counsel's testimony from the Machner hearing. For instance, Brooks cites the statement of trial counsel that "[t]he theory [o]f the defense was that [the victim] had a history of clinical depression and that there were serious ... problems and that Mr. Brooks was engaged shortly before [the victim's] death in a course of mentally abusive conduct [to the victim] and that she took her own life." However, in the same hearing, when postconviction counsel asked, "So the theory of defense was that [the victim's death] resulted from suicide, not homicide," trial counsel responded, "that's correct." We conclude that the statement Brooks quotes is merely another way of saying that the victim committed suicide-the statement does not conflict with the trial court's finding. Moreover, the trial court had first-hand knowledge of trial counsel's theory of the defense-it presided over the entire trial and it was not relying on an after-the-fact characterization of that theory.
¶25 We also note the trial record supports the trial court's finding. For example, during opening statements, trial counsel stated: "[s]he shot herself" and "you will also conclude that Keith Brooks did not shoot [the victim]. It's an unfortunate tragedy, but she shot herself; and you will find him not guilty." This theory was reinforced in trial counsel's closing stressing that the jury had to decide whether the State had proven beyond a reasonable doubt whether Brooks was the one who had pulled the trigger. Thus, Brooks has not shown that the trial court's finding as to the nature of the defense was clearly erroneous.[6]
C. Trial Counsel's Strategy Was Not Deficient
¶26 Brooks argues that trial counsel were ineffective because they embraced the bad facts in a way that would cause a homicide conviction. He argues that trial counsel incorrectly believed that a defendant cannot be convicted of a homicide charge, including reckless homicide, by verbally or mentally abusing someone, even if such abuse contributes to the death by pushing the already-depressed person over the edge to commit suicide.[7] He contends that under the first-degree reckless homicide jury instruction such abusive conduct can constitute first-degree reckless homicide. In essence, he is arguing that trial counsel admitted the elements of reckless homicide. Brooks then makes the conclusory argument that the jury followed his interpretation of the reckless homicide instruction and, therefore, trial counsel's representation was deficient.
¶27 However, for trial counsel's conduct to be deficient, Brooks would have to overcome the strong presumption of reasonableness of trial counsel's strategy by demonstrating that trial counsel's decision was an "irrational trial tactic or based upon caprice." See Breitzman , 378 Wis. 2d 431, ¶ 65. "Reviewing courts should be 'highly deferential' to counsel's strategic decisions and make 'every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " Id . (citations omitted). Additionally, reviewing courts " 'will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment.' " See id. (brackets in original; citation omitted). Where, as here, a trial court has determined that trial counsel had a reasonable strategy, the strategy "is virtually unassailable in an ineffective assistance of counsel analysis." See id. (citation omitted).
¶28 Moreover, Brooks ignores the fact that nothing in the record suggests that the jury interpreted the first-degree reckless homicide jury instruction in the way that he argues. During the trial neither party, especially the State, suggested that Brooks could be guilty of either first-degree intentional homicide or first-degree reckless homicide if the jury concluded that Brooks pushed the victim to suicide. Each party had a consistent theory of the case that was presented to the jury. The State's theory was that after abusing the victim emotionally, verbally, and physically in the days leading up to her death, Brooks took a gun, put it to the back of the victim's head, and shot her.
¶29 Trial counsel's consistent theory was that although Brooks abused the victim, the victim committed suicide, and that Brooks was not guilty of homicide. In closing argument, trial counsel argued that what the jury really had to decide was whether the State had "proven to you beyond a reasonable doubt that Brooks is the one that pulled this trigger." Trial counsel argued that the case was not an easy case-a suicide versus a homicide. The choice presented to the jury was to acquit if the evidence showed a suicide and to convict if it showed a homicide. Trial counsel argued that Brooks did not kill the victim because he did not pull the trigger. Trial counsel concluded, "if you think that this version can be true, what I told you [the victim committed suicide], this case has not been proven beyond a reasonable doubt." The State did not object and did not argue that Brooks could be guilty of first-degree intentional or first-degree reckless homicide by pushing the victim to commit suicide. Again, the option presented to the jury was suicide or homicide. Trial counsel's strategy was reasonable. See id.
¶30 In its closing argument, the State argued that the victim was not in a state of mind that pushed her to suicide. It argued that Brooks was gone for more than two years, and during that time the victim was not so distraught that she had to kill herself. It argued that Brooks wanted the jury to believe that when he came back for a short time and decided to leave, she was so distraught that she wanted to kill herself-which was "incredible just on its face." The State clearly did not argue that Brooks pushed the victim to the edge such that she committed suicide.
¶31 Moreover, the State never argued that Brooks could be found guilty of first-degree reckless homicide if his conduct caused the victim to commit suicide. However, as an alternative argument, in case the jury did not conclude that Brooks intended to kill the victim, the State suggested that maybe Brooks had removed the magazine from the gun but had forgotten that there was a bullet in the chamber. So, when he was hitting the victim in the head with the gun and terrorizing her, he forgot the gun was loaded. However, it was, and he shot and killed her. Although the State raised the suggestion regarding first-degree reckless homicide for the first time in rebuttal, it never suggested that Brooks' conduct caused the victim to shoot herself. The State emphasized that the evidence supported its argument that one way or another, Brooks killed the victim by pulling the trigger himself.
¶32 Further, trial counsel testified at the Machner hearing that the trial strategy did not constitute an admission that Brooks caused the victim's death. Trial counsel stated:
I am aware of the jury instructions in the case and what the definition is of ... criminally reckless conduct and that [Brooks'] conduct of being mean ... did not implicate him as being a guilty person in her death. [The victim] caused her own death by shooting herself and I was very clear on that.
Trial counsel also stated that she did not believe the jury would interpret the jury instruction as meaning that Brooks' abusive conduct toward the victim was an admission that he caused the victim's death. She stated that the issue in the case was who fired the fatal shot. Trial counsel also testified that she "[did] not believe the defense argument would encourage the jurors to find [Brooks] guilty of any degree of homicide[.]"
¶33 Additionally, trial counsel explained that the defense asked for the lesser included reckless homicide charge because there was evidence that the gunshot was not a near-contact wound, but rather occurred from farther away, and therefore jurors might think that Brooks did not intend to kill the victim. Trial counsel stated that if the jury believed Brooks shot the victim, but it was not intentional, they might convict him of the lesser included reckless homicide, which would result in a sentencing option that did not include a mandatory life sentence.
¶34 There was absolutely no argument or inference during the trial that pushing the victim to commit suicide constituted either intentional or reckless homicide. Postconviction counsel's theory of ineffective assistance of counsel is built on speculation that the jury found Brooks guilty of first-degree reckless homicide based on a theory that was not argued to the jury and that it was not instructed upon. Juries are presumed to follow the trial court's instructions. State v. LaCount , 2008 WI 59, ¶ 23, 310 Wis. 2d 85, 750 N.W.2d 780.
¶35 Based on the foregoing, we conclude that Brooks has not met his burden of showing that trial counsel's strategy was deficient. See Breitzman , 378 Wis. 2d 431, ¶ 65. This conclusion, alone, is dispositive of Brooks' ineffective assistance of counsel claim. Nonetheless, to be complete, we address the prejudice prong.
D. Brooks' Claim of Prejudice is Conclusory
¶36 In support of his conclusory argument that he was prejudiced, Brooks merely quotes the following language from United States v. Cronic , 466 U.S. 648, 659 (1984) : "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." He then contends that trial counsel's concession "arguably automatically ranks" as per se prejudicial ineffective assistance of counsel, necessitating a new trial.
¶37 However, the facts of this case do not fall within the language quoted from Cronic -here, trial counsel subjected the State's case to meaningful adversarial testing. The jury trial lasted seven days. The State called twenty-two witnesses including police officers, M.E.s, forensic experts, and character witnesses. Trial counsel vigorously cross-examined the State's witnesses. Trial counsel also called as witnesses two forensic pathologists, a forensic investigator, two detectives, and the victim's workplace supervisor. Trial counsel also made a lengthy and comprehensive closing argument, emphasizing the evidence that supported the conclusion that the victim committed suicide. We conclude that the record demonstrates that trial counsel subjected the State's case to meaningful adversarial testing. See id.
¶38 Moreover, Brooks' conclusory prejudice argument amounts to nothing more than rehashing his argument that trial counsel were deficient. He argues:
Self-defeat-thus prejudice-ensued when the defense's strategy, evidence, arguments, and jury instructions-in concert-opened a broad, straight path to a reckless homicide conviction, by allowing the jurors to conclude that Brooks' conduct fit the elements of reckless homicide, as stated in the standard instructions presented and approved by the defense ... prejudice is when [the] verdict merits no confidence.
(Brackets added; citation, italics, and parentheses omitted.) In other words, Brooks is merely arguing that because trial counsel's strategy was deficient, he suffered prejudice.
¶39 However, as we concluded earlier, Brooks has not met his burden of showing that trial counsel's strategy was deficient. We further conclude that he has not met his burden of proving prejudice.
II. The Jury Instruction on the Burden of Proof Comports with Due Process
¶40 Brooks also asserts that the standard Wisconsin jury instruction on proof beyond a reasonable doubt violates due process because it does not communicate to the jury that they must acquit if they have reasonable doubt. He relies on two studies that, he argues "refute and empirically disprove" the Wisconsin Supreme Court's holding in State v. Avila , 192 Wis. 2d 870, 888-89, 532 N.W.2d 423 (1995), overruled on other grounds , State v. Gordon , 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765, which upheld the jury instruction against a due process challenge.[8]
¶41 The Avila decision is controlling law and holds that WIS JI-CRIMINAL 140 comports with due process because it is not reasonably likely that a jury would understand the instruction to allow conviction based on proof below the reasonable doubt standard. See Avila , 192 Wis. 2d at 888-89. "The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case." Cook v. Cook , 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). Therefore, we reject Brooks' argument based on Avila .
III. Brooks Is Not Entitled to a New Trial in the Interest of Justice
¶42 Brooks also relies on WIS. STAT. § 752.35 (2015-16),[9] contending that he is entitled to a new trial in the interest of justice because the real controversy was not fully and fairly tried. Section 752.35 affords this court discretion to "reverse the judgment or order appealed from" and "direct the entry of the proper judgment or remit the case to the trial court ... as [is] necessary to accomplish the ends of justice." See § 752.35.
¶43 A miscarriage of justice may be found when there is "a probability of a different result on retrial such that a new trial in the interest of justice is warranted." See State v. Kucharski , 2015 WI 64, ¶ 46, 363 Wis. 2d 658, 866 N.W.2d 697. However, such discretionary reversal power is exercised only in " 'exceptional cases.' " See State v. Burns , 2011 WI 22, ¶ 25, 332 Wis. 2d 730, 798 N.W.2d 166 (citation omitted). See also State v. Watkins , 2002 WI 101, ¶ 79, 255 Wis. 2d 265, 647 N.W.2d 244 (stating that discretionary reversal power "should be exercised sparingly and with great caution").
¶44 Brooks argues that the real controversy was not fully tried because the trial counsel "did the work of the prosecution in regards to the crime of reckless homicide" and because the jury instruction misstated the law regarding the burden of proof. Based on our conclusions that Brooks has not met his burden of showing trial counsel's strategy was deficient and that controlling Wisconsin law establishes that the proof beyond a reasonable doubt jury instruction satisfies due process, we also reject this argument. See State v. McKellips , 2016 WI 51, ¶ 51, 369 Wis. 2d 437, 881 N.W.2d 258. We hold that the real controversy was fully tried.
CONCLUSION
¶45 For the reasons stated, we conclude that trial counsel were not ineffective, the jury instruction on the burden of proof comports with due process, and a new trial in the interest of justice is not warranted. Therefore, we affirm.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

The issues raised on appeal relate solely to Brooks' first-degree reckless homicide conviction.

During the trial, a police lieutenant testified that there was no live bullet in the gun's chamber, which was unusual because after a semi-automatic handgun is fired, the casing discharges and a new bullet enters the chamber. This testimony would form part of the basis for the State's argument in closing.

During the jury instruction conference, the State and trial counsel indicated they were jointly requesting the lesser included offense instructions.

We do not discuss the other contentions raised by Brooks' motion because he does not pursue them on appeal.

See State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

Brooks also asserts two other portions of the trial court's findings of fact regarding trial counsel not being deficient are clearly erroneous. These findings include the trial court's statements "there is no way anyone ... can eliminate the risk of jurors taking something the wrong way," and "they did the best with what they had." Brooks makes no argument in support of his contentions and, therefore, they are rejected. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

Brooks asserts that he has not found any authority stating that the facts of this case cannot constitute reckless homicide. He merely relies on Commonwealth v. Carter , 52 N.E.3d 1054, 1061-62 (Mass. 2016), a case where the court held that under Massachusetts law a person could be charged with involuntary manslaughter when the person's conduct did not extend beyond words-the juvenile in that case had persuaded the victim to commit suicide. The State counters that Wisconsin law is clear that pushing someone to suicide does not constitute homicide, but cites no authority.
Carter was a Massachusetts court's interpretation of a Massachusetts crime. It is neither binding nor instructive in guiding this court's interpretation of Wisconsin law. The decision also post-dates this case. In any event, we resolve the case on narrower grounds and thus decline to address the issue of whether under Wisconsin law verbally and mentally abusing someone could provide a basis for a reckless homicide charge. See State v. Castillo , 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (stating that appellate courts should resolve appeals "on the narrowest possible grounds").

The studies are Michael D. Cicchini, & Lawrence T. White, Truth or Doubt? An Empirical Test of Criminal Jury Instructions , 50 U. Rich. L. Rev. 1139 (2016) and Michael D. Cicchini & Lawrence T. White, Testing the Impact of Criminal Jury Instructions on Verdicts: A Conceptual Replication , 117 Colum. L. Rev. Online 22 (2017).

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.