STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas B. BRULPORT, Defendant-Appellant.†

Court of Appeals

*No. 95–1687–CR. Submitted on briefs February 16, 1996.—Decided May 15, 1996.*

(Also reported in 551 N.W.2d 824.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John Allen Pray* of the *Legal Assistance Program University of Wisconsin Law School*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. Thomas B. Brulport appeals from a judgment of conviction for one count each of

possession of explosives, damage to property by explosives and second-degree reckless endangerment of safety pursuant to §§ 941.31(1), 943.02(1)(c) and 941.30(2), STATS., all as a party to the crime.

Brulport raises sufficiency of evidence issues as to all three convictions. With respect to the possession of explosives charge, Brulport contends that the material he possessed was not an "explosive compound" within the meaning of § 941.31(1), STATS. With respect to the damage to property by means of an explosive charge, Brulport contends that the material was not an "explosive" within the meaning of § 943.02(1)(c), STATS. With respect to the reckless endangerment charge, Brulport contends that the State did not establish that he created an unreasonable and substantial risk of death or great bodily harm or that he was aware of such risks.

Brulport also contends that § 941.31(1), STATS., barring the possession of explosives, is unconstitutionally vague because the statute does not provide sufficient notice that the materials used in this case would be considered an "explosive compound."

We reject Brulport's arguments and affirm the judgment of conviction.

BACKGROUND

On November 1, 1992, Brulport, Glenn Luzar and Paul Garcia gathered at Luzar's home. One of them suggested that the three go to a store to purchase some aluminum foil and drain cleaner to produce a device that would burst.[1] Testimony at the trial described this device as a "MacGyver bomb." Brulport purchased the items with money Luzar gave him. After returning to

---

[1] Brulport claims that it was Luzar's idea, while Luzar claims that it was Brulport's idea.

Luzar's house with these items, the group put strips of foil and drain cleaner into two plastic soda bottles and shook them. According to Brulport, either Luzar or Garcia placed one bottle in the mailbox of the neighbor across the street, and Luzar placed the other bottle in the neighbor's car which was parked in the driveway next to the house. The group then returned to Luzar's house to observe the outcome.

Approximately ten minutes later, the bottle in the car exploded. Hearing the explosion, the neighbors went outside to see what had happened. Finding nothing, they went back inside. Just after closing the door, the second bottle exploded, causing the mailbox to shatter and partially detach from the side of the house.

The State charged Brulport as a party to the crimes of: (1) possession of explosives for an unlawful purpose in violation of § 941.31(1), STATS.; (2) intentionally damaging the property of another by means of explosives in violation of § 943.02(1)(c), STATS.; and (3) second-degree reckless endangerment of safety, contrary to § 941.30(2), STATS. Brulport waived a jury trial.

The evidence at the bench trial established that the combination of aluminum foil and drain cleaner produces a hydrogen gas which gradually heats, expands and ultimately explodes. The device did not require a detonating or ignition mechanism to trigger the explosion.

At the close of the evidence, the trial court found Brulport guilty of all three charges. Brulport was sentenced to concurrent five-year probation terms for each count. In addition, he was ordered to serve concurrent terms of ninety days in the county jail as a condition of probation on each count. Brulport appeals.

DISCUSSION

*Sufficiency of the Evidence*

1. "Explosive Compound" and "Explosive."

Brulport first contends that the combination of aluminum foil and drain cleaner in a two-liter soda bottle cannot be considered an "explosive compound" or an "explosive" pursuant to §§ 941.31(1) and 943.02(1)(c), STATS. The statutes, in relevant part, read as follows:

> **Possession of explosives. (1)** Whoever makes, buys, transports, possesses, or transfers any *explosive compound* or offers to do the same, either with intent to use such explosive to commit a crime or knowing that another intends to use it to commit a crime, is guilty of a Class C felony.

Section 941.31(1) (emphasis added).

> **Arson of buildings; damage of property by explosives. (1)** Whoever does any of the following is guilty of a Class B felony:
> . . . .
> (c) By means of *explosives*, intentionally damages any property of another without the other's consent.

Section 943.02(1)(c) (emphasis added).

Brulport argues that the individual components of aluminum foil and drain cleaner encased in a plastic soda bottle do not constitute either an explosive compound or an explosive within the meaning of these statutes. Instead, Brulport contends that the materials are harmless household products which are not primarily designed to explode. In support, Brulport points to

513

the evidence showing that: (1) the hydrogen gas produced by the mixture did not instantaneously react, (2) the devices were not ignited or detonated by any triggering mechanism, and (3) the devices took ten to fifteen minutes to burst.

Brulport contends that the statutes in question are intended to address the unauthorized possession or use of inherently dangerous or volatile compounds such as dynamite, nitroglycerin or TNT. Brulport claims that the devices in this case are more akin to the pressure produced by shaking a soda container. As such, Brulport contends that the devices are beyond the purview of the statute. Thus, Brulport concludes that the evidence was insufficient to demonstrate that the devices were either "explosives" or an "explosive compound."

Although Brulport brings the issues to us on sufficiency of evidence grounds, the threshold question is one of statutory construction—the meaning of "explosive compound" and "explosives" in §§ 941.31(1) and 943.02(1)(c), STATS., respectively. Issues of statutory interpretation are questions of law which we review de novo. *State v. Mattes,* 175 Wis. 2d 572, 578, 499 N.W.2d 711, 713 (Ct. App. 1993).

Section 941.31(1), STATS., does not define the phrase "explosive compound," nor does § 943.02(1)(c), STATS., define the term "explosives." The State urges that we adopt the definition of "explosive" as set out in the Wisconsin Administrative Code for purposes of these statutes. *See* WIS. ADM. CODE ch. ILHR 7. We may look to the Wisconsin Administrative Code for guidance in defining terms used in the statutes where the terms used in the statute and the code are sufficiently

514

similar. *See Sullivan Bros. v. State Bank*, 107 Wis. 2d 641, 648, 321 N.W.2d 545, 548-49 (Ct. App. 1982).

Chapter 7 of the rules of the Department of Industry, Labor and Human Relations is entitled "Explosive Materials." *See* WIS. ADM. CODE ch. ILHR 7. The purpose of this chapter is to "establish minimum safeguards to life, health and property by the adoption of reasonable and effective standards relating to explosive materials." *Id.* § ILHR 7.01. Similarly, ch. 941, STATS., is entitled "Crimes Against Public Health and Safety." And, although ch. 943, STATS., is not similarly titled,[2] we think it obvious that § 943.02(1)(c), STATS., barring the damage of property by the use of explosives, is also designed to protect the public safety. Therefore, we properly look to the administrative code for assistance in defining the term "explosive" and the phrase "explosive compound."

The administrative code defines "explosive" as "any chemical compound, mixture or device, the primary or common purpose of which is to function by explosion." WIS. ADM. CODE § ILHR 7.04(18). The code goes on to define "explosion" as a "substantially instantaneous release of both gas and heat." *Id.* § ILHR 7.04(17). We adopt these definitions for purposes of both §§ 943.02(1)(c) and 941.31(1), STATS.[3]

---

[2] Chapter 943, STATS., is entitled "Crimes Against Property."

[3] Our analysis is similar to that of the Superior Court of Pennsylvania in *Commonwealth v. Bristow,* 138 A.2d 156, 158 (Pa. Super. Ct. 1958). There, the defendant was charged under a law which made it illegal to sell fireworks in which "explosives are used for the purpose of producing a visible or an audible effect by . . . explosion." *Id.* The statute further defined "fireworks" as "[including] any combustible or explosive composition . . . prepared for the purpose of producing a visible or an audible

Applying these definitions to the instant case, we conclude that the "MacGyver bombs" fit the definitions of an "explosive compound" and an "explosive[ ]" for purposes of §§ 941.31(1) and 943.02(1)(c), STATS. The devices were made of compounds,[4] the purpose of which was to create an explosion by the substantially instantaneous release of gas and heat.

Brulport further argues that the devices fall outside the statutes because they did not include a detonating or ignition mechanism. However, the administrative code's definitions do not require such an apparatus. Rather, the code requires only the necessary "chemical compound, mixture or device," WIS.

---

effect by combustion, explosion . . . and shall include . . . toy cannons in which explosives are used." *Id.* However, the statute did not define "explosive composition," "explosion" or "explosives." The trial court had ruled that the statute was unconstitutional on grounds of vagueness, overbreadth and an improper exercise of the police power, and the state appealed. *Id.*

In addressing the state's appeal, the Superior Court of Pennsylvania first found it necessary to define the term "explosives." *Id.* at 159. The court relied on the common understanding of the word, holding that it is "a substance (or a combination of substances) which upon rapid decomposition or combustion causes an explosion, that is, a violent bursting or expansion with noise." *Id.* The court concluded that the fireworks device in that case qualified under this definition.

[4] Section 941.31, STATS., uses the term "explosive compound" rather than just "explosive." "Compound" is defined as "something (as a substance, idea, creation) that is formed by a union of elements, ingredients, or parts." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 466 (1976). We also adopt this dictionary definition.

ADM. CODE § ILHR 7.04(18), and the resulting explosion, *id.* subsec. (17). Both of these components are satisfied by the evidence in this case.

Brulport also argues that the devices are not included under the statutes because the explosions were not instantaneous. However, the administrative code does not require an instantaneous explosion, but rather a "substantially instantaneous" explosion. We conclude that the ten- to fifteen-minute interval between the capping and shaking of the devices and the ensuing explosions was not so lengthy as to remove the question from the realm of the fact finder. This is especially so in light of the expert testimony that such devices are "unpredictable" and can explode in anywhere from five seconds to several minutes.

■

Brulport also argues that the statutes are aimed at the use of those explosive materials or compounds which are inherently dangerous or volatile, such as dynamite, nitroglycerin or TNT, not the harmless kinds of materials involved in this case. However, as we have noted, the goal of the statutes is to protect persons and property from the dangers produced by an explosion. That goal would be frustrated if we construed the statute to exclude materials which, although harmless standing alone, when combined produce the very result at which the legislation is aimed.

■

Brulport argues that our definition of "explosive compound" and "explosive" will take in various forms of innocent conduct (for example, the spray resulting from shaking a can of soda). We first observe that this argument has nothing to do with the sufficiency of evidence in this case. Second, we bear in mind that the

crime created by § 941.31(1), STATS., is not merely the possession of an "explosive compound," but rather such possession *with intent to commit a crime or with knowledge that another intends to use the substance to commit such crime. Id.* Similarly, the crime covered by § 943.02(1)(c), STATS., is not merely the use of explosives, but rather such use with intent to damage the property of another without the other's consent. It is these additional elements which transform otherwise innocent conduct into criminal conduct.[5]

We hold that the evidence was sufficient to show that Brulport possessed an "explosive compound" for purposes of § 941.31(1), STATS., and that he damaged property by means of an "explosive[ ]" for purposes of § 943.02(1)(c), STATS.

### 2. Proof of Risk and Knowledge of Risk.

Brulport's next issue concerns his conviction for second-degree reckless endangering safety pursuant to § 941.30(2), STATS. Brulport contends that the evidence was insufficient to show that he created an unreasonable and substantial risk of death or great bodily harm and that he was aware of such risks. *See* WIS J I—CRIMINAL 1347.

"In reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have

---

[5] Brulport's conduct in this case may well be less egregious than that which we might normally see prosecuted under these statutes. However, Brulport raises no issue regarding the prosecutor's discretionary decision to charge three felonies against him in this case.

found guilt beyond a reasonable doubt." *State v. Holtz,* 173 Wis. 2d 515, 518, 496 N.W.2d 668, 669 (Ct. App. 1992).

Section 939.22(14), STATS., defines "great bodily harm" as "bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." The State introduced the testimony of Raymond Lenz, a forensic scientist with the State of Wisconsin Crime Laboratory in Milwaukee. Lenz performed an analysis of the compounds in the damaged bottles. He testified that the combination of the acids or drain cleaner with aluminum foil in the bottles reacted to create a hydrogen gas which caused the explosion. He also testified that there is no way to determine precisely how much time will pass before a reaction and explosion will occur. Lenz stated that the acid sprayed as a result of the explosion can cause burns.

Here, the explosives were placed in a family's car and mailbox. The bottles could have exploded and sprayed the acids on a person's face or skin when opening the mailbox or while present in the car. The victims in this case investigated the explosion in the car just minutes before the bottle in the mailbox exploded. When the bottle in the mailbox exploded, it did so with enough pressure and force to shatter and partially detach the metal mailbox from the victims' house. Clearly, this created a substantial risk of great bodily harm.

██

The State was not required to prove that Brulport's conduct *actually* caused serious harm to another—just that the conduct created an unreasona-

ble and substantial risk of such harm. *See State v. Johnson,* 184 Wis. 2d 324, 347, 516 N.W.2d 463, 470-71 (Ct. App. 1994). We conclude that the trial court's determination that Brulport created such a risk is reasonably supported by the evidence.

We also reject Brulport's contention that he was not aware of the potential risk to others because of his diminished intellectual capability. Brulport maintains that although he is in his thirties, he is a "high school dropout with a fifth grade reading level" and that he "has a mental age of 12 years and 2 months and an [I.Q.] of 71."

However, Brulport's own testimony revealed that he was aware that the devices were specifically and deliberately made to explode. Brulport testified on direct examination that he was aware that Luzar placed the devices in the neighbor's mailbox and car to "get even" with the neighbors for something. Brulport testified that Luzar had stated that a friend of his had shown him "how to make an M-80" and that Brulport, himself, purchased the items from a convenience store to intentionally create such a device. Brulport also stated that he understood an M-80 to be "[s]omething like a fire cracker." Brulport also admitted in response to the State's questioning on cross-examination that he knew that the items he purchased were "going to be used to make [the] M-80 device or whatever that was going to explode" at Luzar's neighbor's house. This evidence allowed the trial court to reasonably infer that Brulport knew of the concomitant risk.

While other portions of Brulport's testimony suggest that he thought the devices were not likely to cause harm, it was for the trial court as the fact finder to assess any conflicting aspects in Brulport's testi-

mony and to draw the appropriate inferences therefrom. We cannot say that the evidence was so lacking in probative value and force as to Brulport's state of mind such that no trier of fact, acting reasonably, could conclude that Brulport understood the likely consequences of his conduct.

We are satisfied that the record supports the trial court's finding that Brulport created an unreasonable and substantial risk of great bodily harm and that he was aware that his conduct created such a risk.

### Constitutionality of § 941.31(1), Stats.

Brulport argues that § 941.31(1), STATS., barring the possession of explosives, is unconstitutionally vague because it did not provide sufficient notice that the "MacGyver bombs" would be considered explosives.[6] As noted earlier, the statute makes it illegal to "possess[ ] . . . any explosive compound . . . either with intent to use such explosive to commit a crime or knowing that another intends to use it to commit a crime." *Id.*

Before a statute will be invalidated as unconstitutionally vague, we must be convinced beyond a reasonable doubt that there is some ambiguity or uncertainty in the description of the conduct prohibited

---

[6] Besides answering Brulport's vagueness challenge, the State also responds that the statute is not overly broad. However, we do not read Brulport's brief to raise this latter constitutional issue. Moreover, such an overbreadth challenge requires a showing that the statute's sanctions apply to constitutionally protected conduct which the state is not permitted to regulate. *State v. Neumann*, 179 Wis. 2d 687, 711, 508 N.W.2d 54, 63 (Ct. App. 1993). Brulport does not address this requirement.

that either: (1) prevents a person of ordinary intelligence who wants to obey the statute from determining what is prohibited conduct, or (2) prevents the trier of fact from ascertaining guilt or innocence and forces the trier of fact to create and apply its own standards of conduct. *State v. Corcoran,* 186 Wis. 2d 616, 632, 522 N.W.2d 226, 232 (Ct. App. 1994). We answer constitutional questions independently of the trial court. *Id.* at 628, 522 N.W.2d at 231.

The definitions which we have ascribed to the statutory terms are those which reasonable persons would ordinarily associate with "explosive" or "explosive compound." We properly construe all words and phrases *according to common and approved usage.* Section 990.01(1), STATS. These definitions are fully comprehensible to the average person. It is not necessary for the legislature to list the plethora of chemical or household ingredients that could possibly be used to create such an explosive. The statutory language is specific enough *to provide notice to a person seeking to abide by* the law not to mix chemicals with an intent to perform a criminal act, and it does not require finders of fact to create their own standards of conduct. *See Corcoran,* 186 Wis. 2d at 632, 522 N.W.2d at 232.

## CONCLUSION

We hold that the evidence was sufficient as to all the charges. We further hold that § 941.31(1), STATS., is not unconstitutionally vague. Accordingly, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.