COURT OF APPEALS
DECISION
DATED AND FILED

February 24, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP756-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2014CF1488**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

DAVID EARL MONTGOMERY,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Racine County: WYNNE P. LAUFENBERG, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. David Earl Montgomery appeals a judgment entered upon a jury's guilty verdicts for possessing a firearm as a felon and second-degree recklessly endangering safety, and after resentencing in front of a new judge.[1] Montgomery argues that he is entitled to a new trial on the following grounds: (1) the evidence was insufficient to support each conviction, (2) the penalty enhancer for committing a violent crime in a school zone did not apply to either conviction and resentencing was an improper remedy, (3) the circuit court should have prevented the State from admitting evidence concerning the existence and nature of his prior convictions, and (4) the circuit court should have *sua sponte* provided the jury a special instruction concerning recorded statements. For the reasons that follow, we affirm.

## BACKGROUND

¶2 Montgomery was charged with (1) possessing a firearm as a felon, *see* WIS. STAT. § 941.29(2)(a), and (2) (2017-18)[2] second-degree recklessly endangering safety while using a dangerous weapon, *see* WIS. STAT. § 941.30(2) and § 939.63(1)(b). Both counts were charged with an enhancer alleging that the offenses were violent crimes committed in a school zone, contrary to § 939.632(2)(a). According to the criminal complaint, Montgomery, a convicted felon, pointed a black semiautomatic handgun at the face of a neighbor, A.Y., as she and her son, D.Y., drove by his house.

---

[1] The Honorable Faye M. Flancher presided over Montgomery's jury trial, original sentencing, and postconviction proceedings. The Honorable Wynne P. Laufenberg resentenced Montgomery pursuant to Judge Flancher's postconviction order requiring resentencing in front of a new judge.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶3    Montgomery chose to represent himself at trial.  A.Y. testified that on October 29, 2014, Montgomery confronted her and her son, D.Y., as she prepared to drive D.Y. to work.  She testified that Montgomery "came running out the house and he pulled a gun on me, put it toward my driver's window and started yelling some nonsense, and then I tried to pull off and he tried to grab my door handle and then he kicked my door.  I still have the dent in my door from it."

¶4    A.Y. testified that Montgomery pointed the gun at her face as he stood next to the driver's side window.  The gun was approximately two feet from A.Y.'s face.  It was black and looked like an actual firearm, not a toy gun or BB gun.  She testified that she knew the difference between actual firearms and BB guns from growing up in a family of hunters.

¶5    D.Y., too, testified that Montgomery confronted them with an actual firearm.  Supporting his conclusion, D.Y. described himself as "an avid hunter. I've been hunting since I was probably 12 years old."

¶6    Police linked Montgomery to a house adjacent to the crime scene and obtained a search warrant.  The house was on Domanik Drive and Montgomery's girlfriend, Tomeca Denwiddie, lived there.  Officers executed the search warrant the next day, October 30, 2014.  Montgomery was inside the house. Officers saw him coming out of the southeast bedroom.

¶7    An officer testified that the southeast bedroom contained "a queen or king-sized bed, and it was an adult person's type room.  Upon looking in the closet I noticed large amounts of adult sized male clothing."  Officers found a black semiautomatic handgun under the mattress, and a .40 caliber rifle in the closet. Police also discovered a credit card document sent to Montgomery at the Domanik Drive address.

¶8     Investigator Stephen Mueller interviewed Montgomery. Mueller testified that Montgomery denied living with Denwiddie and said he went there every morning to get his children off to school. He admitted having contact with A.Y. on October 29, 2014. Montgomery told Mueller he had only carried a BB gun that looked like a real gun and that he threw the BB gun away after the confrontation. According to Mueller, Montgomery denied owning the handgun and rifle found in the bedroom but admitted handling them and showing Denwiddie how to handle them. Montgomery also told Mueller that he knew "he couldn't possess a firearm because he was a convicted felon."

¶9     Tomeca Denwiddie testified that she lived at the house with her children and owned the firearms seized by police. She said that on October 29, 2014, Montgomery was at her residence getting the children ready for school. She testified that Montgomery told her he confronted the neighbors with a BB gun. Her daughter also testified that Montgomery took a BB gun out with him to scare the neighbors.

¶10     Before the jury deliberated, the circuit court instructed it on both substantive crimes and on the penalty enhancer for committing a violent crime in a school zone. The jury found Montgomery guilty on both counts and decided that the offenses occurred in a school zone. At sentencing, the circuit court imposed consecutive bifurcated sentences on both counts, each comprising three and one-half years of initial confinement followed by two years of extended supervision. In the aggregate, the court imposed seven years of initial confinement followed by four years of extended supervision, for a total of eleven years.

¶11     Through appointed counsel, Montgomery filed a postconviction motion asserting that he was entitled to the following relief:  (1) a new trial on

both counts because neither offense was a "violent crime" to which the school zone penalty enhancer could be applied, (2) a new trial on count two based on the absence of two pattern jury instructions related to the "dangerous weapon" enhancer, (3) a new trial on both counts based on the State's presentation of evidence concerning the nature of Montgomery's prior felony convictions, (4) sentence modification on both counts as an alternative form of relief because the school zone penalty enhancer did not apply, and (5) a new trial on both counts based on the absence of a special jury instruction under WIS. STAT. § 972.115(2)(a) (absence of audio or visual recording of custodial statement).

¶12 At the postconviction hearing, the State did not object to sentence modification based on the misapplication of the school zone penalty enhancer, but opposed the remedy of a new trial. The State also contended that the remaining grounds offered in support of a new trial were the result of Montgomery's decision to represent himself and did not constitute reversible error.

¶13 The circuit court determined that the violent crime in a school zone enhancer was a "legal impossibility" and did not apply to either count. The court agreed with the State that this error did not warrant a new trial and instead ordered that Montgomery be resentenced in front of a new judge. The court denied Montgomery's remaining claims for a new trial.[3]

---

[3] With regard to the dangerous weapon enhancer, the State at resentencing clarified that they were there for sentencing "on the underlying offenses only, possession of a firearm by felon and second degree recklessly endangering safety." It did not ask the circuit court to consider the weapons enhancer on count two, and that enhancer does not appear on the judgment of conviction following resentencing.

¶14 At resentencing, the circuit court imposed the following: on count one, three years of initial confinement followed by two years of extended supervision; on count two, one year of initial confinement followed by two years of extended supervision to run consecutive to count one. In the aggregate, the resentencing court imposed four years of initial confinement followed by four years of extended supervision, for a total of seven years. Montgomery appeals.

## DISCUSSION

*Sufficiency of the Evidence on Count One*

¶15 Montgomery argues that neither of the jury's guilty verdicts was supported by sufficient evidence. We review the sufficiency of the evidence de novo, but in the light most favorable to sustaining the conviction. **State v. Hanson**, 2012 WI 4, ¶15, 338 Wis. 2d 243, 808 N.W.2d 390. The standard of review is the same whether the conviction relies upon direct or circumstantial evidence. **State v. Poellinger**, 153 Wis. 2d 493, 503, 451 N.W.2d 752 (1990). We will sustain a conviction unless the evidence is so insufficient "that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." **Id.** at 501. "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." **Id**. at 507.

¶16 The crime of felon in possession of a firearm requires proof that the person charged (1) is a convicted felon and (2) possessed a firearm. WIS. STAT. § 941.29; WIS JI—CRIMINAL 1343. As the jury was instructed, possession may be actual (the defendant knowingly had actual physical control of the firearm) or

6

constructive (the firearm was in an area over which the defendant had control and the defendant intended to exercise control over the firearm). WIS JI—CRIMINAL 920; WIS JI—CRIMINAL 1343; *State v. Peete*, 185 Wis. 2d 4, 15-16, 517 N.W.2d 149 (1994). Further, "[p]ossession may be shared with another person. If a person exercises control over an item, that item is in his possession, even though another person may also have similar control." WIS JI—CRIMINAL 920; WIS. JI–Criminal 1343.

¶17 At trial, the prosecutor argued that Montgomery constructively possessed the pistol and rifle found in the southeast bedroom of the home. He also argued that Montgomery actually possessed the firearms because (1) he admitted handling the pistol and rifle with his girlfriend, and (2) he used a pistol during his confrontation with A.Y. and D.Y. On appeal, the State argues that each of these theories is supported by sufficient evidence. We agree.

¶18 Regarding constructive possession, the jury could reasonably conclude that Montgomery lived or stayed at his girlfriend's house and possessed items in the southeast bedroom. On the morning of October 29, he exited the house to confront A.Y. The next morning, he was in the house, exiting the southeast bedroom when officers arrived to perform the search. It was an adult's bedroom that contained a man's clothing. Police discovered the rifle in that closet and found a black pistol concealed underneath the adult-sized mattress. Officers found a credit card document mailed to Montgomery at the house's street address.

¶19 Montgomery points to evidence suggesting that the firearms belonged exclusively to his girlfriend, such as testimony that Montgomery's child support mail reflected a Jacato Drive address, and Denweddie's testimony that she purchased and owned the guns. However, juries determine witness credibility and

7

decide whether to accept or reject certain evidence. *Poellinger*, 153 Wis. 2d at 506. Here, a reasonable juror could infer from the trial evidence that Montgomery constructively possessed the pistol and the rifle. We must follow this inference. *Id.* at 506-07.

¶20 The trial evidence also supported the conclusion that Montgomery actually possessed both weapons. First, Investigator Mueller testified that Montgomery admitted physically handling both the pistol and the rifle: "[D]uring my interview with him he admitted to handling the weapons and showing his girlfriend how to handle them.... Mr. Montgomery admitted to handling the weapons." Even if he only handled the pistol and rifle for a few moments, that is enough to satisfy the felon in possession statute. "[T]here are no temporal limitations in this statute. It does not specify what length of time a felon must possess the firearm in order to violate the statute." *State v. Black*, 2001 WI 31, ¶ 19, 242 Wis. 2d 126, 624 N.W.2d 363. The jury could reasonably credit Mueller's testimony regarding Montgomery's admission.

¶21 Second, A.Y. and D.Y. both testified that Montgomery accosted them by pointing a handgun at A.Y.'s face. Both testified that it appeared to be an actual handgun rather than a BB gun. Due to their familiarity with hunting, both said they knew the difference between actual firearms and BB guns. A BB gun was never recovered and Montgomery said he had thrown it in a river. A real handgun was discovered in the house Montgomery exited when he approached A.Y. On this evidence, the jury could find beyond a reasonable doubt that Montgomery carried a real handgun to confront A.Y.

*Sufficiency of the Evidence on Count Two*

¶22 To convict Montgomery of second-degree recklessly endangering safety, the State had to prove that he endangered the safety of another through criminally reckless conduct. WIS. STAT. § 941.30(2). It had to show that Montgomery's conduct created an unreasonable, substantial risk of death or great bodily harm to another person, and that he was aware of that risk. ***State v. Brulport***, 202 Wis. 2d 505, 519-20, 551 N.W.2d 824 (Ct. App. 1996).

¶23 A reasonable juror could have found beyond a reasonable doubt that Montgomery recklessly endangered A.Y.'s safety. A.Y. testified that Montgomery ran from his house to her car and pointed a black handgun directly at her face from approximately two feet away. He yelled at her, tried to open her car door and then kicked at it, leaving a dent. A.Y. believed she was being threatened with a real firearm. D.Y. testified that Montgomery used an actual gun. The next day, police recovered an actual black handgun from the house next door, in a bedroom occupied by Montgomery. Though Montgomery told police he used a BB gun, he also told them he threw it in the river. This evidence supports an inference that Montgomery endangered A.Y.'s safety through the use of criminally reckless conduct.

*Resentencing Based on Improper Penalty Enhancer*

¶24 Montgomery was found guilty of both offenses with the penalty enhancer for committing a violent crime in a school zone, contrary to WIS. STAT. § 939.632. As the postconviction court properly concluded, the enhancer was incorrectly applied because neither felon in possession of a firearm nor second-degree recklessly endangering safety met the definition of a "violent crime" under

9

§ 939.632(1)(e). As such, the court struck the penalty enhancer on both counts and ordered resentencing on the underlying offenses.

¶25 Montgomery argues that the postconviction court erred by ordering resentencing as a remedy for the improper enhancers. Relying on *State v. Avila*, 192 Wis. 2d 870, 532 N.W.2d 423 (1995), he contends that the court was required to order a new trial on both counts.

¶26 Montgomery misunderstands the holding and reasoning in *Avila*, both of which support resentencing as the appropriate remedy. Avila was convicted of possession of cocaine with intent to deliver while possessing a dangerous weapon. *Id.* at 878. The Wisconsin Supreme Court determined that the State did not properly prove the dangerous weapon penalty enhancer because the jury was not instructed on the elements of that enhancer. *Id.* at 891-93. As a remedy, the circuit court was ordered to vacate the enhancer and enter a judgment of conviction solely on the predicate offense of possession with intent to deliver. *Id.* at 877, 892-93. Avila could be retried on the issue of whether he was guilty of possession with intent to deliver while possessing a dangerous weapon. *Id.* at 877, 893. If Avila was not retried, the circuit court was directed to vacate his sentence so that Avila could be resentenced on the predicate offense alone, without the enhancer. *Id.*

¶27 Here, the circuit court struck the school zone penalty enhancers. The State did not seek to retry Avila on the predicate charges with the enhancers, and resentencing was the proper remedy.

¶28 We reject Montgomery's contention that the error went to the elements of the offense and therefore a new trial is necessary. On reconsideration, the *Avila* court clarified that "contrary to the statement in the opinion, a weapons

penalty enhancer is an element of the enhanced offense when that offense is charged, but not the underlying offense itself." *See Avila*, 192 Wis. 2d at 893b (on motion for reconsideration). The enhancers did not change the elements of the underlying offenses, and the circuit court properly vacated the enhancers and ordered resentencing on both counts.

*Evidence Concerning Montgomery's Prior Felony Convictions*

¶29 Montgomery said to the jury during his opening statement: "I am not that stupid to know I got a felony and go possess a firearm." Thereafter, the Kenosha County Clerk of Courts testified that Montgomery was convicted in 2005 of a felony offense, namely, the crime of felon in possession of a firearm. Citing *State v. McAllister*, 153 Wis. 2d 523, 451 N.W.2d 764 (Ct. App. 1989), Montgomery argues that the circuit court should not have allowed the State to prove the nature of his prior felony conviction.[4]

¶30 In *McAllister*, we held that when a defendant offers to stipulate that he or she has a prior felony conviction, the nature of the felony is not relevant unless the evidence is admitted for a permissible purpose under WIS. STAT. § 904.04(2). *McAllister*, 153 Wis. 2d at 529. According to Montgomery, his opening statement was sufficient to constitute such an offer.

¶31 We are not persuaded. First, as is standard practice, the circuit court instructed the jury that opening statements made by the parties were not evidence.

---

[4] Montgomery also complains that the clerk should not have testified about additional charges in the 2005 case that were ultimately dismissed. His argument on this point is undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 492 N.W.2d 633 (Ct. App. 1992). Further, Montgomery elicited from the clerk on cross-examination that the other charges were dismissed.

Second, Montgomery never offered to stipulate to his status as a convicted felon. Though Montgomery may regret it now, he knowingly, intelligently, and voluntarily waived his right to counsel and chose to represent himself at trial. That he was unsuccessful is not grounds for a new trial. *See* *State v. Clutter*, 230 Wis. 2d 472, 602 N.W.2d 324 (Ct. App. 1999). As stated in *Clutter*:

> Inherent in a defendant's decision to represent himself is the risk that a defense not known to him will not be presented during trial.... If his strategy in proceeding pro se results in a valid defense being waived, it reflects the hazards of his decision to waive counsel. To rescue this defendant from the folly of his choice to represent himself would diminish the serious consequences of the decision he made when he elected to waive counsel. Moreover, ordering a new trial would … encourage defendants to proceed pro se believing that they would have an opportunity to have a second trial with counsel if they were dissatisfied with the first verdict. Multiple trials would strain our limited judicial resources and would compromise the finality of judgments.

*Id.* at 477-78.

*Lack of Special Jury Instruction Regarding Recorded Statements*

¶32 Investigator Mueller testified that he recorded his interview with Montgomery but the recording was defective: "A lot of static and then you would be having a conversation, and then all of a sudden it would speed up really fast for a couple of seconds so you missed a portion of the interview." The recording was not played for the jury.

¶33 Montgomery did not request a special jury instruction under WIS. STAT. § 972.115(2)(a), which provides that:

> If a statement made by a defendant during a custodial interrogation is admitted into evidence in a [felony jury trial] and if an audio or audio and visual recording of the interrogation is not available, upon a request by the

> defendant ... the court shall instruct the jury that it is the policy of this state to make an audio or audio and visual recording of a custodial interrogation of a person suspected of committing a felony and that the jury may consider the absence of an audio or audio and visual recording of the interrogation in evaluating the evidence relating to the interrogation and the statement in the case.

*See also* WIS JI—CRIMINAL 180.  This statutory provision does not apply if the State asserts and the circuit court finds that one of various conditions applies or that good cause exists for not providing the instruction.  *See* § 972.115(2)(a)16.  One such condition includes equipment malfunction:

> The law enforcement officer or agent of a law enforcement agency conducting the interrogation in good faith failed to make an audio or audio and visual recording of the interrogation because the recording equipment did not function, the officer or agent inadvertently failed to operate the equipment properly, or, without the officer's or agent's knowledge, the equipment malfunctioned or stopped operating.

§ 972.115(2)(a)3.

¶34    Montgomery acknowledges both that he did not ask the circuit court to provide the special jury instruction and that WIS. STAT. § 972.115(2)(a) does not create a duty for the court to give the instruction absent a request.  He argues that it was plain error not to give the instruction under the facts of this case.  We are not persuaded.

¶35    By failing to object, a defendant waives any alleged error in proposed jury instructions or forms of verdict.   WIS. STAT. § 805.13(3).  Moreover, where an objection was not preserved, this court does not have the power to review jury instructions for plain error under the common law.  *State v. Schumacher*, 144 Wis. 2d 388, 409-10, 424 N.W.2d 672 (1988) (unobjected to jury instruction errors may be addressed only by the Wisconsin Supreme Court).

If a party fails to request a jury instruction, that party forfeits its right to later claim that the circuit court's failure to give the instruction was error. *State v. Feela*, 101 Wis. 2d 249, 272, 304 N.W.2d 152 (Ct. App. 1981), *overruled on other grounds by State v. Pharr*, 115 Wis. 2d 334, 345 n.8, 340 N.W.2d 498 (1983).

¶36 The plain language of WIS. STAT. § 972.115(2)(a) requires a circuit court to give the instruction only if the defendant requests it. Montgomery made no such request and has forfeited his claim of error.

¶37 Moreover, it is not at all clear from the record that any error occurred. Because Montgomery failed to request the special instruction, the circuit court never inquired into whether one or more of the statutory conditions rendered the instruction unnecessary. The only evidence of record supports a finding that the equipment malfunctioned. Equipment malfunction is one of the enumerated conditions rendering the instruction unnecessary. WIS. STAT. § 972.115(2)(a)3.

*Cumulative Error Claim*

¶38 Finally, Montgomery argues that the combined effect of his asserted claims of trial error justify new trials on both charges. As shown, those claims lack merit. Combining them does not create a winning claim. Zero plus zero remains zero. *Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).

*By the Court.*—Judgment affirmed.

This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

14